IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| EDWARD BENSON, | § | |
| | § | No. 177, 2019 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | |
| | § | Cr. ID No. 1210005652A (N) |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: April 8, 2020
Decided: April 20, 2020

Before **SEITZ**, Chief Justice; **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices.

## ORDER

This 20th day of April, 2020, having considered the briefs and the record below, it appears to the Court that:

(1) In 2014, Edward Benson pleaded guilty to first-degree assault. A Superior Court judge sentenced him to twenty-five years at Level V incarceration to be suspended after four years and six months, followed by decreasing levels of supervision. In 2018, the State charged Benson with a Violation of Probation ("VOP"). On the day of his VOP hearing, Benson failed to appear. At his rescheduled VOP hearing, the Superior Court found Benson in violation and resentenced him to nineteen years and 363 days at level V, suspended after ten years,

followed by decreasing levels of supervision. On appeal, Benson argues that the Superior Court deprived him of due process when, after he terminated his counsel, the court permitted him to proceed *pro se* at the VOP hearing without a colloquy to confirm that he understood the risks of representing himself. Benson also argues that the Superior Court sentenced him with a closed mind. We conclude that Benson's arguments are without merit and affirm the judgment of the Superior Court.

(2)   In 2012, police arrested Benson for shooting the mother of his infant son. The State charged Benson with Attempted Murder First Degree, Possession of a Firearm During the Commission of a Felony, Possession of a Firearm by a Person Prohibited, and two counts of Endangering the Welfare of a Child. In 2014, Benson pleaded guilty to the lesser included offense of Assault in the First Degree. The Superior Court sentenced him to twenty-five years at Level V to be suspended after four years and six months, followed by decreasing levels of supervision.

(3)   In 2017, the State charged Benson with violating three conditions of his probation for leaving Delaware without authorization, consuming a controlled substance, and failing to comply with special conditions. The Superior Court found Benson in violation and resentenced him to twenty years at Level V, immediately suspended for four years at Level III GPS monitoring.

(4)  In November 2018, members of the Governor's Task Force (the "GTF") conducted an administrative search of Benson's home.  The GTF discovered a firearm, ammunition, and cocaine in Benson's residence.  Benson was later arrested and charged with several drug and weapons related offenses.  The State charged him with violating three conditions of his probation: committing a new offense, possessing a firearm, and possessing a controlled substance.  The probation officer recommended that the court resentence Benson to twenty years at Level V, suspended after five years, followed by decreasing levels of supervision.

(5)  At Benson's VOP hearing on December 6, 2018, newly retained counsel appeared on Benson's behalf and requested a continuance.  The court agreed to continue the VOP hearing to December 13, 2018.  During the hearing, when discussing VOP hearing procedure, the judge stated that "you could bring – if, for instance, you caught the person with the gun, you can bring the officer in . . . and have the officer testify that he was in possession of the gun."[1]  Continuing, the judge stated,

> [The VOP hearing] doesn't have to wait until the next charges, because we're not going to adjudicate those charges.  We're going to adjudicate the [VOP], and the [VOP] can be that he's in possession of a firearm.  I think that's probably more than just a technical violation.  I don't believe – I think all violations are violations, but you don't have to wait.  You can get the officer in.[2]

---

[1] App. to Opening Br. at A45-46.
[2] *Id.* at A46.

3

Before concluding the hearing, the court instituted a new condition on Benson's probation—he was to report to his probation officer daily.

(6) Benson failed to appear for his December 13, 2018 VOP hearing. He also cut off his GPS monitor and stopped reporting to his probation officer. Three months later, in March 2019, police apprehended Benson in Maryland and returned him to Delaware. The State filed a supplemental VOP report to include Benson's disappearance as an additional violation. The supplemental report also increased the recommended time served at Level V incarceration from five years to ten years.

(7) On April 4, 2019, the court held Benson's VOP hearing. The hearing opened with the court's review of the supplemental VOP report. The court decided it did not need to address the initial VOP allegations and instead could proceed on the charge related to Benson's disappearance. Before the State called Benson's probation officer as a witness, Benson's counsel informed the court that Benson wished to represent himself. The court allowed Benson to proceed *pro se* without a colloquy with Benson about the consequences of his decision.

(8) Benson requested a continuance until the adjudication of his November drug and weapons charges. He sought to challenge the validity of the GTF's administrative search and suppress the evidence obtained. The court informed Benson that he was also facing a VOP charge for failure to report. During the court's

questioning, Benson admitted to cutting off his ankle bracelet and failing to report to his probation officer for three months. The State called Benson's probation officer who confirmed Benson's failure to report. Benson then testified on his own behalf that, in December, he had upcoming medical appointments for his multiple sclerosis. Benson felt that, if he appeared for the December VOP hearing, he risked the court resentencing him at Level V and would not receive necessary medical treatment. After hearing from both parties, the court characterized Benson as "self-pity[ing]"[3] rather than taking responsibility for his actions. The court found Benson in violation of his probation and sentenced him to ten years at Level V, followed by decreasing levels of supervision.

(9) Benson's first claim is that the court deprived him of his due process rights when it allowed him to proceed *pro se* in the absence of a knowing and voluntary waiver of the assistance of counsel. We review alleged constitutional violations *de novo*.[4]

(10) To waive a constitutional right to the assistance of counsel, a probationer must first have a constitutional right to the assistance of counsel. There is no absolute right to the assistance of counsel at a VOP hearing.[5] In Delaware an indigent probationer has been appointed counsel if the probationer

---

[3] *Id.* at A67.
[4] *Boyer v. State*, 985 A.2d 389, 2009 WL 3841973, at *1 (Del. Nov. 16, 2009) (TABLE).
[5] *See Schoolfield v. State*, 72 A.3d 502, 2013 WL 3807471, at *1 (Del. July 18, 2013) (TABLE).

raises a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present.[6]

(11)  Neither of these conditions exist.  Benson admitted to removing his GPS monitor and ceasing contact with his probation officer.  Although he provided an explanation for his actions, those reasons were not substantial or complex enough to warrant the court's consideration of the appointment of counsel.  Nor does the existence of medical appointments justify failing to report for three months.  Benson did not have a right to counsel at his VOP hearing.  Thus, the court did not deprive Benson of due process by proceeding without a colloquy with Benson about his decision to terminate his counsel.[7]

(12)  Benson's second claim is that the Superior Court judge sentenced him with a closed mind.  We review sentencing decisions for an abuse of discretion.[8]

---

[6] *Richardson v. State*, 806 A.2d 164, 2002 WL 972233, at *2 (Del. May 9, 2002) (TABLE) (citing *Jones v. State*, 560 A.2d 1056, 1058 (Del. 1989)).

[7] Benson cites *Willis v. State* for the proposition that even if he did not have an absolute right to an attorney, a probationer in Benson's situation would reasonably expect to be represented by counsel. Opening Br. at 13 (citing 856 A.2d 1067, 2004 WL 637847 (Del. Jan. 5, 2004) (TABLE)). In *Willis*, a public defender represented the probationer at the hearing scheduling the VOP hearing. 2004 WL 637847 at *1.  The court did not grant the public defender leave to withdraw and the probationer was not given notice that he would not have the assistance of the public defender. *Id.* This Court found that because the probationer would reasonably assume that the public defender's representation would continue, he was entitled to an attorney. *Id.*  Here, Benson terminated his attorney and said he wished to represent himself.  Benson had no reasonable expectation of the further assistance of counsel.

[8] *Kurzmann v. State*, 903 A.2d 702, 714 (Del. 2006).

6

When the sentence falls within statutory limits, our review is limited to whether the sentence is (i) based on factual predicates which are false, impermissible, or lack minimal reliability or (ii) the result of judicial vindictiveness or bias, or a closed mind.[9] "A judge sentences with a closed mind when the sentence is based on a preconceived bias without consideration of the nature of the offense or the character of the defendant."[10] "The judge must have an open mind for receiving all information related to the question of mitigation."[11]

(13) As evidence of a preconceived bias, Benson points to the judge's statements at the December 6, 2018 hearing. As an initial matter, these statements occurred months before Benson's ultimate VOP hearing and sentencing. Moreover, these statements can be fairly read as an explanation for continuing the VOP hearing to the following week, instead of waiting for the adjudication of Benson's drug and weapons charges. This is consistent with 11 *Del. C.* § 4334(c), which mandates that VOP hearings occur "without unnecessary delay."[12] Thus, the judge's statements on December 6, 2018 reflect an attempt to raise logistical points for Benson's rescheduled VOP hearing and not evidence of bias or a closed mind.

---

[9] *See id.*
[10] *Weston v. State*, 832 A.2d 742, 746 (Del. 2003).
[11] *Id.*
[12] 11 *Del. C.* § 4334(c).

(14) At Benson's ultimate VOP hearing in April 2019, the judge heard arguments from both sides before imposing the sentence. The judge considered the nature of Benson's failure to appear violation. Because of the seriousness of Benson's underlying offense and his prior VOP for leaving the state, it was "very important to [the] judicial officer that Mr. Benson report on a regular basis."[13] The judge also allowed Benson to testify at length about his medical condition as potential mitigating evidence. The judge's comment that Benson's testimony was "self-serving, self-pity"[14] reflected the judge's conclusion as a result of evidence presented at the hearing. Thus, the judge did not sentence Benson with a closed mind.

NOW, THEREFORE IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Chief Justice

---

[13] App. to Opening Br. at A67.
[14] *Id.*

8